STATE OF VERMONT
ENVIRONMENTAL COURT

Secretary, }
Vermont Agency of Natural Resources, }
}
v. } Docket No. 131-7-98 Vtec
}
Jeffrey Allen and Terry Allen, }
Respondents. }
}

## DECISION AND ORDER

On July 13, 1998, the Secretary of the Vermont Agency of Natural Resources (ANR) issued an administrative order pursuant to 10 V.S.A. §8008 regarding Respondents, who timely requested a hearing in Environmental Court.  Respondents represent themselves through Respondent Terry Allen; and the Secretary of the Agency of Natural Resources is represented by Catherine Gjessing, Esq.

The Court extended the time for the hearing for good cause at the request of and by agreement of the parties, to accommodate the schedules of the parties and to allow discovery, and then again to allow the Respondents to apply for an exemption.  The Court also extended the time for the issuance of the decision for good cause.  No environmental harm resulted from the delay.

The statutes, rules and permits applicable to this matter are 4 V.S.A. Chapter 27; 10 V.S.A. §1953 and 1954; 10 V.S.A. Chapter 201; and the Water Supply and Wastewater Disposal Rules (Environmental Protection Rules, Chapter I, Subchapter 4).  10 V.S.A. §8012(c)(2).

Findings

Terry Allen and Jeffrey Allen are brothers.  Jeffrey Allen is a recovering alcoholic without a current driver's license.  On January 30, 1997, Terry Allen purchased the subject property on "Old Route 7B" in North Clarendon as a residence and home occupation business for Jeffrey Allen, to enable Jeffrey Allen to become more self-supporting.  Respondents proposed for Jeffrey Allen to live in the residence and operate a home

1

occupation business from an accessory building on the property. The property consists of a .41-acre parcel of land improved with a single family residence and a barn-style accessory or garage building located less than 100 feet from the residence. Adequate potable water under pressure and adequate wastewater disposal to serve the residence is provided in the residence.

In April of 1989, the former owners had received Water Supply and Wastewater Disposal Permit No. WW-1-0086 from the Agency of Natural Resources under the then-Public Buildings rules to demolish a then-existing garage and to construct a new one to be used for the former owners' furniture storage and retail sales business, apparently run as a home occupation/commercial use, without the installation of a water supply or sewage disposal connection. Condition #2 of that permit provides that "[t]he project is approved for the new garage to be used for furniture storage and limited retail sales by family members only. The[re] is no water and sewer connection planned for this new . . . building." Condition #1 required the project to be completed as described in the application; and stated that any changes from the project as described in the application required "prior written approval" from the Agency.

In January of 1997, Jeffrey Allen telephoned the regional Permit Specialist, Rick Oberkirch, to determine whether he needed any Act 250 or other permits to convert the garage to a small general grocery store. Mr. Oberkirch filled out a project review sheet based on the information provided by telephone. The description of the project appears on the Project Review Sheet in full as follows:

> proposed change of use of previously permitted building, to be described as follows: proposed home-occupation (no employees outside of owner and immediate family) grocery store, pre-packaged foods (meat, sandwiches etc.) no raw produce, no exposed foods, construct water supply lines to sink fixtures, sewer lines to septic - family members only to use toilet in house - no public use

The Project Review Sheet as issued on January 20, 1997, stated that a Water Supply and Wastewater Disposal permit or approval is required for the project as described. Respondents do not appear to have sought to appeal or challenge the description of the project on the project review sheet, either in January or when a copy was sent to them in March attached to their town zoning permit. However, they maintain that they never intended to put water supply or wastewater disposal facilities in the building.

2

On March 11, 1997, Respondents received a decision on their variance application from the Town of Clarendon's Zoning Board of Adjustment, allowing Jeffrey Allen to conduct a retail convenience store as a home occupation/commercial use in the accessory building. That decision stated that Respondent "will use the existing septic and water located on the property." The Zoning Permit issued effective April 17, 1997 based on that ZBA decision noted that the project "requires state water supply/wastewater review" and attached the January 1997 Project Review Sheet. Respondents did not apply for or receive a Water Supply and Wastewater Disposal permit from the Agency before opening for business on or about April 9, 1997. Coffee is prepared and sold on the premises; as all other foods are sold already packaged and no other food is prepared or handled on the premises. From April through June of 1997, members of the Agency's regional office staff discussed the matter with Respondents and their consulting engineer, considered and refused a waiver of the permit requirement, and informed Respondent Jeffrey Allen that a Water Supply and Wastewater Disposal permit would be required. Respondent Jeffrey Allen maintained his belief that a permit was not or should not be required. A year later, in July of 1998, the Administrative Order was issued.

The violations asserted in the Administrative Order in this case are Respondents' failure to obtain a Water Supply and Wastewater Disposal Permit under 10 V.S.A. §1953 and Respondents' violation of the Water Supply and Wastewater Disposal Rules (Environmental Protection Rules, Chapter I, Subchapter 4) by their "failure to install an adequate supply of potable water in a grocery store." No specific violation was claimed regarding Respondents' failure to install a toilet in the store.

Failure to obtain a permit in violation of 10 V.S.A. §1953

Because a Water Supply and Wastewater Disposal Permit (WW-1-0086) was issued for the accessory building, and under that permit "prior written approval" is required for any changes to the use proposed in the original application, an amendment to Permit No. WW-1-0086 was required prior to conversion of this building to a home occupation general store.

Respondents have no plans to construct or to physically modify either the existing accessory building or the water supply or wastewater disposal system for the residence, or to make a connection to the existing system of a new or modified structure. They have

3

changed the contents of the building from one selling furniture to one selling packaged groceries and coffee to go, as well as other non-food general store items. If it were not for the existing permit under which the accessory building was built, it is by no means clear from either the statute or the regulations that the Agency may regulate such a change in use to a building, without any physical modification to the building or its water supply or wastewater disposal system.

The current statutory authority for the permitting program, 10 V.S.A. §1953(a), provides in full that:

> A person shall not construct or modify an existing potable water supply or wastewater system or construct or modify a building or structure which requires construction or modification of a water supply or wastewater system or make connection to an existing potable water supply or wastewater system of a new or modified structure without first having obtained a permit from the secretary.

Based merely on the text of this section, it was not unreasonable for Respondents to interpret this section as inapplicable to their change of use of the building. This definition does not explicitly[1] require that a permit be obtained for a change of use within a building when no modifications are being made to the building or to its water supply or wastewater system. While the Agency has consistently interpreted it to include such changes of use, and courts should give great weight to an agency's interpretation of the statute it is charged with administering, the Agency did not present in evidence any written regulation or regulatory policy or procedure which would have made such interpretation accessible to the public. See 3 V.S.A. §831(b) and §806.

The exemptions in §1954 exempt single-family residences from the permitting requirement. Further, §1954(d) provides that a permit "shall not be required" for a change of use "[w]hen a single family residence is used for both residential and commercial purposes, and the commercial purposes entail the substantial presence of nonresidential employees or regular visits by the public, but do not result in an increase in design flow or potable water supply demands," provided that certain conditions are met regarding testing

---

[1] The exemption provided in §1954(d) does suggest indirectly that a permit may be required for a change of use.

4

and that "there has been no change to the residence, lot, potable water supply or wastewater system in a manner so that the permitting requirements of section 1953 of this title are triggered." It was not unreasonable for Respondents to interpret this section as exempting them from the permitting requirement for their change of use of the building.

The town's zoning regulations appear to[2] treat this property as a single family residence with an accessory building used for a home occupation, that is, as a single family residence used for both residential and commercial purposes. The Agency would have treated the house's septic system and water supply as sufficient to serve the store if a covered walkway had been constructed between the house and the accessory building or if they in some other way were attached. However, the Agency did not present in evidence any written regulation or regulatory policy or procedure which would have made such interpretation accessible to the public. Without such a physical connection, the Agency treats the two buildings as separate for the purposes of water supply and wastewater disposal, even though the distance between the store use and the house facilities remains the same, and even if the particular town's zoning regulations treat the store as a protected home occupation in an accessory building. 24 V.S.A. §4406(3). Respondents argued that this distinction was not a rational one; they did not request that the Agency make this policy explicit or request a formal change in the policy. See 3 V.S.A. §831(b) and §806. However, because Respondents are required to apply for a permit amendment due to the terms of Permit No. WW-1-0086, we do not address the rationality of this distinction in the present case.

Failure to install a water supply to a grocery store in violation of the Rules

The Water Supply and Wastewater Disposal Rules apply only to the review of projects subject to the permit requirements of 10 V.S.A. Chapter 61. Section 1-402 of the Rules defines "buildings under the jurisdiction of this subchapter" as "those buildings defined in Title 10 V.S.A. §1953, as a structure used for human habitation or occupation

---

[2] The zoning regulations are not before the Court; some towns allow a home occupation in an accessory building and others do not. The town's regulation of the use is not in any way binding on the Agency; it is only relevant to the state of mind of the Respondents.

that requires a potable water supply and wastewater disposal facilities." However, the quoted definition attributed to 10 V.S.A. §1953 is not in fact found in that statutory section; it may have originated in a former definition of public buildings under 24 V.S.A. Chapter 24; that chapter has since been repealed. Respondents have not sought a declaratory judgment on the validity of this rule or its applicability to them. 3 V.S.A. §807.

§1-404(A) of the Rules provides that "[a]ll buildings under the jurisdiction of this subchapter in which people reside, are employed, entertained, lodged, served food[3], or congregate shall be provided with potable water delivered through a pipe system under adequate pressure for the facilities to be served." Respondents wish to provide potable water in the store by a water cooler not under pressure; this is the source of water for the take-out coffee sold in the store. Respondents first argue that the store does not fall within this definition, as the business has no employees, does not serve food, and its customers do not congregate in the store. Assuming for the purposes of this issue that the building falls within the definition of "buildings under the jurisdiction of this subchapter," we find that this is a building in which people "congregate" in the sense of "regular visits by the public" as used in 10 V.S.A. §1954(d).

§1-404(A) goes on to provide that "[w]here it would be unreasonable to require potable water under pressure due to the infrequency or briefness of occupancy, or the availability of a nearby potable water supply point, the Division may determine that a water system for the building is not required." During the pendency of this case, after it became clear that Respondents believed that this section of the Rules exempted the store from the requirement of providing potable water under pressure, this matter was recessed so that

---

[3] Some guidance regarding the Agency's interpretation of this phrase may be found in the Rules Guidance document published on June 23, 1989, regarding Toilet Requirements in Public Buildings, even though that document purports to interpret Rule §4-06 (now §1-406) regarding toilets. One of the six criteria for determining whether non-conventional toilets may be used is that "there is no food or drink handling, preparation, or consumption in the building."

6

Respondents could apply to the Agency for such a ruling.

The Agency denied this determination, both at the Division level and in an internal appeal issued by the Deputy Commissioner of the Department of Environmental Conservation. Respondents do not appear to have attempted to appeal this determination to the Secretary of the Agency. However, the Deputy Commissioner's determination did not address the reasonableness of the requirement, the infrequency or briefness of occupancy, or the availability of a nearby potable water supply point, which are the standards under §1-404(A) and should have been the basis for the ruling. Rather, the determination rested on a stated Agency policy, again not found in any written regulation or regulatory policy or procedure presented to the Court any , that "any business that is handling food, even packaged food, needs running water and some conventional plumbing in order to maintain the building in sanitary condition. It has been our policy for at least two decades that this requirement must be met with facilities installed within the building where the food is handled." The determination went on to state that the minimum acceptable facilities in the building would be hot and cold potable water under pressure, and at least one hand washing sink, and to suggest that low-cost engineering alternatives[4] might be available.

Even though the determination did not address the standards stated in §1-104(A), Respondents did not further appeal the denial by the Deputy Commissioner. This Court does not have jurisdiction of an appeal of the denial, and cannot rule on Respondents' request for an exemption. In the present proceeding, as much as the Court and the parties may have hoped that the §1-404(A) application would provide an acceptable alternative, it did not do so and the appeal of that determination is not before us. If Respondents do apply for an amendment to Permit No. WW-1-0086, they may be able to raise this exemption issue in the context of that amendment application.

---

[4] For example, it may be possible to supply only cold water from the house, to install a small on-demand water heater in the store, and to route the grey water from the sink to a drywell or to pump it back to the house. Respondents must apply for these alternatives before the Agency will rule on them; Respondents may have a route of appeal available to them for an adverse ruling. The viability of those alternatives is not now before the Court.

<u>Conclusions as to Violation</u> (10 V.S.A. §8012(c)(1)):

The statute requires this Court to determine whether a violation has occurred, 10 V.S.A. § 8012(b)(1), independently of reviewing and determining anew a penalty amount, §8012(b)(4), and independently of reviewing the provisions of the order issued by the secretary. §8012(b)(3)

Because a permit applicable to the building had been obtained by the former owners, and because that permit required amendment if anything substantially different was done to the building, Respondents should have applied for and obtained an amendment to Water Supply and Wastewater Disposal permit #WW-1-0086 before changing the use of the building. In the course of that application, or by seeking a declaratory judgment on the validity of the underlying rule or its applicability to them, 3 V.S.A. §807, Respondents could have challenged the jurisdiction of the Agency over the change in use of the building, or whether the use fell into an exempt category. In any appeal from a denial of such a permit, Respondents may also have been able to challenge those jurisdictional issues. Without such action to challenge the jurisdiction or denial of exemption, by continuing to operate the convenience store without first obtaining an amendment to Water Supply and Wastewater Disposal permit #WW-1-0086, Respondents have violated 10 V.S.A. §1953.

Similarly, because Respondents did not further appeal the Agency's denial of their application for an exemption under §104(A), by operating the home occupation convenience store without supplying potable water under pressure, Respondents have violated §1-404(A) of the Rules requiring potable water delivered through a pipe system under adequate pressure for the facilities to be served.

<u>Determination of Order and Penalty</u> (10 V.S.A. §8012(c)(3)):

The Administrative Order contains no remedial provisions limited by 10 V.S.A. §8012(b)(2). Therefore, the Court must review the appropriate order in this matter, as well as to review and determine anew an appropriate penalty amount for the violations by applying the eight criteria set forth in 10 V.S.A. §8010(b). 10 V.S.A. §8012(b)(4).

The Secretary seeks an order setting a schedule for application for the permit amendment, and seeks an order closing Respondents' store until they obtain it. In the

8

judgment of the Court, the order should be modified to create an incentive for filing the permit application and coming into compliance. Accordingly, within 45 days from the date this order becomes final, Respondents shall file the required application to amend[5] Permit No. #WW-1-0086, or shall cease food sales at the store. Only the preparation of coffee at the store is affected by the lack of water in the store for the sanitary preparation of the coffee; therefore only the preparation and sale of coffee at the store must cease immediately. If the required application is filed and deemed complete, Respondents may continue food sales at the store while the application is pending, with the exception of the coffee preparation and sales.

In addition, the Secretary seeks a penalty of $1,000 for the two violations. First we must note that for a civil penalty to withstand constitutional scrutiny, it must be basically remedial in effect, rather than punitive. The methodology inherent in the statute and applied by this Court is to remove the economic benefit gained from the violation, in order to carry out the statutory purpose of preventing the unfair economic advantage obtained by persons who operate in violation of environmental laws, 10 V.S.A. §8001(2) and §8010(b)(5), and then to apply the remaining statutory factors to determine what additional penalty is needed, or whether mitigating factors should reduce any element of the penalty. That is, the entire economic benefit first must be removed to carry out a primary purpose of the Uniform Environmental Enforcement Act: to make it less expensive to comply with the law than to violate it. In the present case, Respondents have not achieved an economic benefit from their failure to have installed a handwashing sink with water under pressure, other than the avoided cost of the engineering and installation of that facility. No credible evidence of the cost of the engineering has been presented, nor of the installation cost as no design alternative, low-cost or otherwise.

---

[5] Although the permit is entitled a Water Supply and Wastewater Disposal permit, the Secretary's minimum requirement seems to be the water supply to and wastewater disposal from a handwashing sink at the building, and does not include a requirement that a toilet be installed.

In the present case, no actual or potential harm to public safety, welfare or the environment resulted from the violation; nor has there been a potential harm to public health except from the preparation of the coffee, as all other foods are sold already packaged and no other food is prepared or handled on the premises. §8010(b)(1). The Secretary's one-year delay in seeking enforcement was not unreasonable; the only mitigating circumstance is the inherent lack of clarity in the statute and regulations discussed above. §8010(b)(2). At least as of the time the exemption was turned down, which was during the pendency of this action, Respondents knew or had reason to know the violation existed. They may have failed to avail themselves of certain opportunities to challenge the regulations or the regulations' applicability to their particular operation; however, parties under the Uniform Environmental Enforcement Act are not required to be represented by counsel. §8010(b)(3) and (b)(8). Respondents had no prior record of non-compliance. §8010(b)(4). The Secretary does not seek actual costs of enforcement in the present case. §8010(b)(7). A deterrent effect will best be achieved in the present case by remitting a portion of the penalty conditional on achieving compliance. §8010(b)(6).

Accordingly, taking all these factors into account, and based on the findings, conclusions, and reasoning of this decision, it is hereby ORDERED that Paragraph A of the Administrative Order is hereby VACATED and instead the Court will impose a total penalty of $1,250, but only $250 of that sum shall be paid initially to the State of Vermont, to be deposited in the general fund pursuant to 10 V.S.A. §8010(e). If the required application is filed on or before 45 days from the date on which this order becomes final, the remaining $1,000 of the penalty shall be placed in escrow. If the permit amendment application is approved, the escrowed funds may be drawn upon by Respondents to pay for the engineering or installation work, upon order of the Court. If the permit amendment application is denied, the funds may remain in escrow during any appeal of such denial. After approval of the work under the permit amendment, any excess remaining in the escrow account shall be returned to Respondents. If Respondents instead elect to cease operation of the store, any excess remaining in the escrow account shall be returned to Respondents.

If the required application is not filed in the allotted time, and an extension of time or stay is not granted by this Court or the Vermont Supreme Court, then the remaining $1,000

10

in the escrow account shall become penalty and shall be paid to the State of Vermont, to be

deposited in the general fund pursuant to 10 V.S.A. §8010(e).


Rights of Appeal (10 V.S.A. §8012(c)(4) and (5)):

WARNING: this decision will become final if no appeal is requested within 10 days of receipt of this decision.  Respondent and the Secretary of the Agency of Natural Resources have a right to appeal this decision.  The procedures for requesting an appeal are found in the Vermont Rules of Appellate Procedure (V.R.A.P.) subject to the exceptions in Vermont Rules of Civil Procedure (V.R.C.P.) 76(a)(3) and (d)(5).  Within 10 days of receipt of this Order, any party seeking to file an appeal must file the notice of appeal with the Clerk of this Court, together with the applicable filing fee.  Questions may be addressed to the Clerk of the Vermont Supreme Court, 111 State Street, Montpelier, VT 05609-0801, (802) 828-3276.  An appeal to the Supreme Court operates as a stay of payment of a penalty, but does not stay any other aspect of an order issued by this Court. 10 V.S.A. §8013(d).  A party may petition the Supreme Court for a stay under the provisions of V.R.C.P. 62 and V.R.A.P. 8.



Done at Barre, Vermont, this 6th day of October, 2000.


_____
Merideth Wright
Environmental Judge

11